COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-135-CR

 

 

TEDDY LEE MURPH                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant
Teddy Lee Murph appeals his conviction for the unlawful possession of a firearm
by a felon.  See Tex. Penal Code
Ann. ' 46.04
(Vernon Supp. 2009).  After the trial
court denied his motion to suppress, Murph pleaded guilty to the offense.  Pursuant to a plea agreement, the trial court
sentenced Murph to four years' confinement. 
In one point, Murph argues that the trial court erred by denying his
motion to suppress.  We will affirm.

II.  Background

Fort
Worth police officer G. C. Bates testified that he was patrolling the east side
of Fort Worth on December 4, 2008.  At
roughly noon, Bates said he observed Murph walking east on the south side of
Rosedale Street.  What originally brought
Murph to Bates=s attention was the peculiar way
he was walking and holding his side. 
According to Bates, Murph Ahad his
left hand pressed up against his upper right side of his body against the
outside of the jacket, and his right hand down near the -- the bottom seam of
the jacket.@ 
Bates said it appeared that Murph was Aattempting
to conceal a large object underneath his jacket.@  Although Bates testified that he never fully
saw the object Murph attempted to conceal, Bates said that A[s]everal
times I observed something black slip from beyond the bottom seam of the jacket
and observed [Murph] each time push it back up underneath the jacket.@  Bates said that utilizing his thirteen years
of experience, he believed the object to be Athe butt
or stock of some type of long gun, either a shotgun or a rifle@ because
of the way Murph would cup his hand each time the object would fall.








Concerned
that Murph had a weapon, Bates radioed for assistance.  Bates said that before assistance arrived,
Murph walked into a convenience store. 
Bates also said that the convenience store sold liquor and that it would
be unlawful to carry a weapon into the premises.  Although he did not stop Murph, Bates said
that he was concerned that Murph was going to commit a robbery.  Bates testified that unless a suspect is Apointing
a weapon at someone or [is] firing the weapon,@ Fort
Worth Police Department procedure requires an officer to wait for assistance
before stopping someone suspected of having a weapon.

Once
assistance arrived, Bates said he and a fellow officer walked into the
store.  Murph was nowhere to be
found.  Using Murph=s
description, Bates asked the store clerk about Murph=s
whereabouts.  The clerk responded that
Murph had left the store.  Concerned that
Murph was carrying a weapon, Bates again radioed other officers to inform them
of Murph=s
description and also inform them that Murph had walked out of the store and
eluded officers= attempts to confront him.  Murph did not attempt a robbery.  Bates did not see Murph again until Murph was
contacted by another officer.








Fort
Worth police officer Sean Green responded to Bates=s call
for assistance.  Green testified that
although he knew it might take him several minutes to get to Bates=s
location, he responded because A[a]nytime
an officer calls out any type of weapon related [issue], most officers respond.@  Green said it did take him several minutes to
respond.  Guided by Bates=s
description, Green spotted Murph near where Bates had reported.  Green also observed that Murph appeared to be
concealing something in his jacket by holding one hand across his chest with
the other hand cupping the object.  Green
pulled in front of Murph and@block[ed]
all [] westbound traffic.@ 
Green then got out of his vehicle and shouted at Murph to get his hands
in the air.  At that time, Murph
announced, AI have a sword.@  Green recalled that Murph=s hands Astarted
going towards his jacket, which [at that] time I did pull my weapon . . . and
told him to get his hands back in the air and get on the ground.@  As Murph complied, he said, AI also
have a gun.@ 
Once Murph was on the ground, Green discovered a sword with a seventeen-inch
blade, a butterfly knife, a fully loaded magazine, and a pistol.  The State charged Murph with the unlawful
possession of a firearm by a felon. 
Murph filed a motion to suppress the weapons found on him.  The trial court denied the motion to suppress,
and Murph pleaded guilty.  This appeal
followed.

III.  Discussion

In one
point, Murph argues that the trial court erred by denying his motion to
suppress.  Specifically, Murph argues
that the officers did not possess a proper basis for stopping him but rather
were relying on a Ahunch@ when
they ordered him to stop.  We disagree.








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total deference to a trial
court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on
credibility and demeanor.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  To suppress evidence because of an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence that rebuts the presumption of proper police conduct.  Amador, 221 S.W.3d at 672; see
Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Amador, 221 S.W.3d at 672.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable.  Id. at 672B73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).













A police
officer may stop and briefly detain a person for investigative purposes if the
officer has a reasonable suspicion to believe that the detained person is
violating the law.  Terry v. Ohio,
392 U.S. 1, 29B30, 88 S. Ct. 1868, 1884 (1968);
Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  Reasonable suspicion exists if the officer
has specific articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably suspect that a particular person
has, or soon will be, engaged in criminal activity.  Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).  These
articulable facts must amount to more than a mere hunch or suspicion.  Davis, 947 S.W.2d at 244 (citing Williams
v. State, 621 S.W.2d 609, 612 (Tex. Crim. App. [Panel Op.] 1981)).  An officer is entitled to rely on information
provided by another officer to justify a stop so long as the officer reasonably
relied on the informing officer=s
information and, based on the information provided, the arresting officer had a
sufficient level of suspicion to ask for the stop.  Hayes v. State, 132 S.W.3d 147, 154
(Tex. App.CAustin 2004, no pet.) (citing United
States v. Hensley, 469 U.S. 221, 228, 105 S. Ct. 675, 680).  In determining whether there is a legitimate
basis for reasonable suspicion, the facts may be viewed from the viewpoint of a
trained law enforcement officer; facts that have no meaning to the untrained
may provide the basis for the deduction and inference that caused the officer
to focus his attention on the accused.  Gilbert
v. State, 874 S.W.2d 290, 295 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref'd).  We
consider the totality of the circumstances at the time of the detention to determine
whether a reasonable suspicion existed to justify the officer=s
action.  Garcia, 43 S.W.3d at 530.

When
officers possess a reasonable suspicion justifying a temporary investigative
detention, they may use such force as is reasonably necessary to effect the
goal of the stop:  investigation, maintenance of the status quo, or
officer safety.  Rhodes v. State,
913 S.W.2d 242, 247 (Tex. App.CFort
Worth 1995),  aff'd, 945 S.W.2d
115, 117 (Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997).  Reasonableness must be judged from the
perspective of a reasonable officer at the scene, rather than with the
advantage of hindsight.  Rhodes,
945 S.W.2d at 118.  Allowances must be
made for the fact that officers must often make quick decisions under tense,
uncertain, and rapidly changing circumstances. 
Id.













In this
case, GreenCthe officer who detained MurphCpossessed
a reasonable suspicion that Murph was engaged in criminal activity.  Green observed that Murph appeared to be
concealing something in his jacket by holding one hand across his chest and
cupping the object with his other hand. 
Green said that whatever Murph was hiding under his jacket was Alarge
[and] could have been a weapon.@  Furthermore, Bates had relayed to Green that
he believed Murph was hiding a weapon and had gone into a store that sold
liquor with that weaponCa violation of the law.  See Tex. Penal Code Ann. ' 46.02
(Vernon Supp. 2009).  Bates=s
conviction about what Murph possessed caused him to call for backup.  And when backup arrived, Bates tried to
investigate; but Murph had slipped away. 
Green was aware that Bates had seen Murph with what appeared to be a
weapon, that Bates was concerned enough to call for backup, and that Murph had
eluded Bates=s attempts to detain him.  By this time, Green possessed articulable
facts that, when combined with rational inferences in the mind of a trained law
enforcement agent, led him to reasonably suspect that Murph had, or soon would
be, engaged in criminal activity.  Thus,
upon spotting Murph, Green was justified in attempting to detain him by telling
him to stop and to Aget his hands in the air.@  At that moment, Murph informed Green that he
had a weapon and started reaching toward his jacket.  Green then pulled his handgun and ordered
Murph to again put his hands in the air and to Aget on
the ground.@ 
Viewed from the perspective of a reasonable officer and giving proper
allowances to Green, we conclude that Green=s show
of force was reasonably necessary to effect the goal of his stopping Murph to
determine whether he was involved in criminal activity.  Rhodes, 945 S.W.2d at 118 (reasoning
that allowances must be made for the fact that officers must often make quick
decisions under tense, uncertain, and rapidly changing circumstances).  We hold that Green was justified in detaining
Murph and overrule Murph=s sole point.

IV.  Conclusion

Having
overruled Murph=s sole point, we affirm the
trial court=s judgment.

 

 

 

 

BILL MEIER

JUSTICE

 

PANEL:  GARDNER, WALKER, and
MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 28, 2010











[1]See Tex. R. App. P. 47.4.